BENET, PLAINTIFF AND RESPONDENT, *v.* HERNÁNDEZ, DEFENDANT AND APPELLANT.

Appeal from the District Court of Mayagüez in an Action for Damages for Malicious Prosecution and Libel. Motion to Dismiss the Appeal.

No. 1193.—Decided May 24, 1915.

APPEAL—STATEMENT OF CASE—ADJUSTMENT OF CONFLICT—ERROR OR INADVERTENCE.—When a conflict exists as to the contents of a statement of the case filed in the appellate court, application should be made to the trial judge for its adjustment; for, although the statement of the case has been filed in the appellate court, the judge who approved it is authorized to cancel his certificate subjoined thereto if convinced that his action was erroneous or performed inadvertently.

NEW TRIAL—JURISDICTION.—Section 220 of the Code of Civil Procedure provides that the court which tried the case is the one which has jurisdiction to entertain the motion for a new trial although the judge before whom the said motion is made may not be the same judge who rendered the judgment.

ID.—CONSTRUCTION OF LAW.—The effect of section 226 of the Code of Civil Procedure is to prescribe expressly that the judge of the trial court, whether the judge who rendered the judgment or not, may hear the motion for a new trial at chambers or in open court, either in his own district or in any other district of the island.

ID.—EVIDENCE—DISCRETION OF COURT.—When the judge who overrules a motion for a new trial holds that the evidence alleged to have been discovered after the trial was not sufficient to change the conclusion reached by the trial judge after a careful study of all the attendant circumstances and it is not shown that in so holding he abused his discretionary power, his ruling should be sustained.

MALICIOUS PROSECUTION — ESSENTIAL ELEMENTS.—In an action for malicious prosecution there are four essential elements which must be alleged and proven, to wit: (1) That the plaintiff has been prosecuted by the defendant; (2) that the prosecution terminated favorably to the plaintiff; (3) that it was instituted maliciously and without probable cause; and (4) that the plaintiff sustained damages thereby.

ID.—DAMAGES—RIGHTS OF INJURED PARTY—COMPENSATION FOR INJURY.—In an action for malicious prosecution the party injured is entitled to an adequate compensation for all the elements of the injury suffered. Such damages include loss of time, peril to life and liberty, injury to fame, reputation, character and health, mental suffering, general impairment of social and mercantile standing, decrease in earning capacity and all losses sustained in business. Such damages must be the direct, natural, and proximate result of the former action.

LIBEL—ATTORNEYS—PUBLICATION OF CHARGE.—The publication of a complaint containing a written charge against the good reputation of an attorney is libel *per se.*

The facts are stated in the opinion.

The appellant appeared *pro se.*

*Mr. José Martínez Dávila* for the respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an action for damages begun in the District Court of Mayagüez. Four days before the date set for the hearing on the appeal the respondent filed a motion for dismissal of the appeal accompanied by various documents, the motion not appearing to have been served upon the adverse party. The court ordered that it be served in the proper manner and set the same day for the hearing on the motion as had been fixed for the hearing of the appeal on its mer-

its. The appellant opposed the motion for dismissal of the appeal by filing a counter-motion, which was also accompanied by various documents. The motion and the appeal were heard on the day set. The attorney for the respondent alone appeared and the case was submitted finally for our consideration and decision.

The motion for dismissal was based on the allegation that the statement of the case which appears in the transcript of the record was filed after the expiration of the time fixed by law and that the amendments proposed by the respondent and approved by the trial judge were not included therein.

As to the first ground, the documents accompanying the counter-motion indicate that said appellant filed his first statement of the case within the extension of the time fixed by law granted him by the trial judge. As to the second ground, the facts are more complicated. The appellant admits in his counter-motion that he presented the statement of the case and delivered a copy thereof to the adverse party on January 19, 1914; that on June 6, 1914, the adverse party proposed amendments to it; that on July 11, 1914, the trial judge ordered him to present a new statement of the case containing a true and exact recital of the proceedings therein; that on July 27, 1914, he filed the new statement of the case and forwarded a copy thereof to the adverse party; that the adverse party did not notify him that he had proposed any amendments to the new statement of the case; that said statement of the case was approved on August 28 by Judge Sepúlveda, who rendered the judgment, and on September 2 by Judge Hutchison, who refused to grant a new trial; that a copy thereof certified to by the secretary was sent up to this court and that another copy was delivered to the adverse party.

Now, from a certificate issued by the Secretary of the District Court of Mayagüez which accompanied the motion for dismissal, it appears that in the record of the case there is a notice from the plaintiff, dated August 12, 1914, propos-

ing amendments to the amended statement of the case, some
of which were allowed by the trial judge. We are confronted,
therefore, with a veritable conflict. If credit be given to the
certificate of the trial judge which is subjoined to the state-
ment of the case brought up to this court, the said statement
''is a true and exact recital of all the proceedings which took
place before me in the oral and public trial of the present
case.'' If credit be given to the certificate of the secretary,
the statement of the case does not contain the amendments
·proposed by the respondent and approved by the trial judge.
This shows error in the action of the respondent in moving
for dismissal of the appeal on that ground. Before coming
to this court he should have applied to the trial judge for
an adjustment of the conflict, which the said judge was in
the best position to make. In the case of *Flynn* v. *Cottle,*
47 Cal., 526, it was held that although the statement of the
case had been filed in the appellate court, the judge who ap-
proved it was ·authorized to cancel his certificate subjoined
thereto if convinced that his action was erroneous or per-
formed inadvertently.

As the respondent did not follow the proper course, we
shall overrule his motion for dismissal of the appeal and
proceed .to consider the statement of the case contained in
the transcript of the record as effective so far as possible.
We deem it opportune to say that we have considered the
amendments· referred to in the certificate accompanying the
motion for dismissal and have concluded that they were not
of great importance for the decision of the appeal. There-
fore the interests of the respondent will not suffer.

In view of the foregoing we will proceed to consider the
appeal on its merits. To that end we will begin by deter-
mining the questions of fact and of law involved therein. The
complaint, the answer, the counter-complaint and the answer
to it cover twenty pages of the transcript of the record. We
shall endeavor to extract the essential -facts in the briefest
manner possible. Whenever we refer to José Benet Colón

and to Agustín Hernández Mena we shall designate them as respondent and appellant respectively.

Three causes of action are alleged in the complaint. The first is for malicious prosecution and is based on the allegation that the appellant maliciously and without probable cause therefor made a sworn complaint against the respondent before the district *fiscal* charging him with being guilty of the crime of false representation and fraud, consisting in that the respondent, knowingly, wilfully, unlawfully, dissemblingly, falsely and fraudulently, represented one Avelino Martínez as his attorney before the Municipal Court of Mayagüez without any authority from the said Martínez to represent him in the said action, the *fiscal* having recommended the dismissal of the complaint because he found no evidence of the guilt of the respondent. The respondent alleged that he had suffered losses on this account in his law and notarial practice to the amount of $2,500; in his social relations to the amount of $2,500, and estimated his mental suffering at $5,000. The second cause of action is for libel and is based on the allegation that the appellant maliciously published the said complaint with the intention of exposing the respondent to public contempt and of injuring him in his profession. The third cause of action is also for defamatory libel and is based on the fact that the appellant published, or caused to be published, or took part in the publication, in a certain newspaper published in Mayagüez, of a certain letter in which the appellant falsely charged the respondent with the commission of certain criminal and dishonest acts, which are specified, with the object of discrediting him before the public. The complaint, which is sworn to and includes all the details necessary in such a pleading, concludes with the prayer that judgment be rendered against the appellant for the sum of $45,000.

The appellant answered, denying generally and specifically all the essential allegations of the complaint, and filed a counter-complaint alleging two causes of action, the first

being for malicious prosecution on the ground that the respondent filed a complaint in the Municipal Court of Mayagüez charging the appellant and the marshal of said court with contempt of court in that they had disobeyed an injunction and violated the Act of March 8, 1906, of which charge the defendants were acquitted, and the second cause of action being for defamatory libel based upon the publication in a Mayagüez newspaper of a letter written by the respondent to the appellant containing specified injurious statements concerning the appellant. The counter-complaint concludes with a prayer for judgment for $50,000.

The case was tried on October 22, 1913, both parties introducing oral and documentary evidence, and on October 31, 1913, judgment was rendered sustaining the complaint, dismissing the counter-complaint and decreeing that the appellant pay to the respondent the sum of $2,000 as an indemnity for damages. In its summary of the case and opinion the trial court expressed itself as follows:

"After carefully considering the evidence introduced and the law and jurisprudence applicable to the questions involved in this action, the court has reached the conclusion that each and all of the essential allegations of the complaint necessary to establish the three causes of action alleged therein, have been proved satisfactorily.

"On the other hand, the court is of the opinion that all of the essential allegations alleged in the counter-complaint necessary to establish the causes of action alleged by the defendant therein against the plaintiff, have not been proved satisfactorily.

"The court wishes to state specially that from the evidence introduced it is convinced beyond all reasonable doubt that the article which appeared in the newspaper called *La Voz de la Patria* on December 26, 1912, entitled 'Neutral Section, Two Letters,' was published by the defendant, Agustín Hernández Mena, or that he caused or permitted it to be published."

The appellant filed a motion for a new trial, which was overruled on December 4, 1913. He moved for reconsideration of the said ruling of December 4 and that motion was overruled on the 13th of the same month and year. Then

the appellant appealed to this court from the rulings of December 4 and 13, 1913, and from the judgment, the said appeal having been heard on December 11, 1914.

We will consider first the questions relating to the new trial and then to those which refer to the judgment.

Both parties maintain that the judge who ruled upon the motion for a new trial acted without jurisdiction. On that ground the respondent moves that the appeal from the order refusing a new trial be dismissed. The appellant asks that this court decide according to law.

The judge who rendered the judgment in this case was transferred to another district and another judge was appointed in his place. After the change a motion for a new trial was made in the trial court and the newly appointed judge considered and ruled upon it. Had he jurisdiction so to do? That is the question which we must decide.

Section 220 of the Code of Civil Procedure, which is substantially similar to section 656 of the code of California and to section 3523 of the codes of Idaho, reads as follows:

"A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a court or referee."

According to the letter of the said statute, it appears to us entirely clear that the court which tries the case is the one which has jurisdiction to entertain the motion for a new trial although the judge who presides when the motion is made may not be the same judge who rendered the judgment.

In the case of *Jones* v. *Sanders,* 103 Cal., 678, the supreme court of the said State applied the rule that in case of a motion for a new trial it is the duty of the trial court to examine the evidence even when it is contradictory, and if it is not satisfied with the conclusions previously reached, it should grant a new trial, and then went on to say: "And the rule is the same whether the motion is heard by the judge who tried the case or by any other judge whose sole knowledge of the facts is obtained from the records. (*Macy* v. *Dávila,*

48 Cal., 646; *Bauder* v. *Tyrral,* 59 Cal., 99; *Blum* v. *Sunol,* 63 Cal., 341; *Wilson* v. *California C. R. R. Co.,* 94 Cal., 166.) "

It appears that the allegation of the parties relative to the lack of jurisdiction in question is based on section 226 of our Code of Civil Procedure, which reads as follows:

"The motion for a new trial may be brought to a hearing before the judge who tried or heard the case, at chambers, or in open court, in any district of the Island."

The above provision does not appear in the Code of Civil Procedure of California, but is included in section 3530 of the codes of Idaho. We have consulted the reports of the Supreme Court of Idaho and have found no decision construing this provision.

In our opinion section 226 should be construed in harmony with section 220. The rule that the *trial court* shall hear the motion for a new trial is clear and the effect of section 226 is to prescribe expressly that the judge of the said trial court may hear the motion either at chambers or in open court, either in his own district or in any other district of the Island. Therefore, the jurisdiction of the judge who ruled on the motion for a new trial in this case is evident.

Let us see now whether the motion, considered on its merits, was or was not properly overruled.

The motion was based upon the discovery of new evidence on a certain point relating to the third cause of action alleged in the complaint, namely, the publication of the libellous letter. As we have seen, the trial judge held that it had been proved that the appellant had caused or permitted the letter in question to be published. The new evidence alleged to have been discovered tended to show that copies of two letters, one of which was the libellous one, were delivered to Antonio Olivencia by an unknown person and that as a mere matter of information he took them to a Mayagüez newspaper for publication and that, in fact, they were pub-

lished. The judge who overruled the motion held that the evidence alleged to have been discovered after the trial was not sufficient to change the conclusion reached by the trial judge after a careful study of all the attendant circumstances, and, in our opinion, it has not been shown that in so acting he abused his discretionary power, which is the only ground on which we could reverse his ruling.

Even admitting the truth of Olivencia's testimony, it is not necessarily in conflict with the conclusion that the appellant permitted the publication of the letter, for the unknown person who delivered it to Olivencia might have been sent by the appellant.

. In view of all the foregoing, the rulings of December 4 and 13, 1913, should be affirmed.

Let us now consider the appeal from the judgment.

The appellant contends that the court erred in sustaining the first and second causes of action set up in the complaint because the respondent did not prove the different elements which constitute a cause of action for malicious prosecution.

In the first place, we will say that only the first cause of action is for malicious prosecution. The second is for libel. This explanation being made, let us see what are the elements essential to an action for malicious prosecution and whether it has been shown that such elements exist in this case. The law governing the matter was set out in *Parés* v. *Ruiz,* 19 P. R. R., 323, as follows:

"In actions of malicious prosecution there are four essential elements which must be alleged and proven, to wit:

"1. That the plaintiff has been prosecuted by the defendant.

"2. That the prosecution ended favorably to the plaintiff.

"3. That it was instituted maliciously and without probable cause.

"4. That plaintiff sustained damages thereby. Field on Damages, section 686, p. 544; 26 Cyc., 8; *Breneman* v. *West,* 21 Tex. Civ. App., 19, 50 S. W. Rep., 471; *Collins* v. *Campbell,* 18 R. I., 738, 31 Atl. Rep., 832."

The existence of the first and second essential elements necessary in this case does not even admit of argument. The evidence shows that the respondent was charged directly under oath by the appellant before the district *fiscal* with the commission of a public crime and that the *fiscal* made the proper investigation and finally requested the entry of a *nolle prosequi* because he found no evidence to sustain the charge against the defendant.

In our opinion the existence of the third essential element was also proved. The facts were as follows: There was a civil action of debt pending in the Municipal Court of Mayagüez between the appellant and Avelino Martínez Mercado. Avelino Martínez Mercado was represented at the beginning of the action by Attorney Juan Quintero. According to the testimony of Quintero at the trial, he took Martínez later to the respondent's office for the purpose of engaging the respondent to continue as his attorney in the action. The respondent testified on trial that he actually took charge of the case as his attorney. A short time after and before judgment Martínez died. Then his brother Manuel asked the respondent to continue in charge of the case, to which the respondent agreed. Manuel Martínez also told the appellant that the attorney in charge of the case was not Quintero but the respondent. Matters being thus, judgment was rendered against Martínez in the municipal court notwithstanding the fact that he had died and the action had not been revived by his succession. Thereupon the respondent, as attorney for Avelino Martínez, appealed to the district court, explaining that he did so in that way because although he was engaged to appear for some of the persons composing his succession, he was not engaged by all of them. The time allowed for appeal could not be lost.

Although the facts occurred as stated, the appellant set out in his sworn complaint to the *fiscal* that "said José Benet, knowingly, unlawfully, dissemblingly, falsely, and fraudulently, represented defendant Avelino Martínez Mercado as

his attorney, the said Avelino Martínez Mercado having previously died, and in such usurped capacity as representative of defendant Avelino Martínez Mercado signed, presented, and delivered to the secretary * * * a notice of appeal from the judgment * * * with the deliberate and criminal intention of defrauding the plaintiff, Agustín Hernández Mena.''

In our opinion a mere perusal of the foregoing facts warrants the conclusion that the appellant charged the respondent with the crime of false representation without probable cause therefor and that in so doing he acted maliciously.

Let us see whether the fourth and last of the essential elements exist.

In treating of malicious prosecution and referring to the elements essential for the recovery of compensating damages, Cyc. says:

''The party injured is entitled to adequate compensation covering all the elements of the particular injury. Such elements of damage include loss of time, peril to life and liberty, injury to fame, reputation, character, and health, mental suffering, general impairment of social and mercantile standing, actual loss and injury to property, interest, and credit; decrease in earning capacity; and all losses sustained in business. Such damages must be the direct, natural, and proximate result of the former suit.'' 26 Cyc., 61.

The three causes of action set up in the complaint are so closely interwoven that they reveal a complete combination. First the complaint, then the publication of that complaint and finally the employment of the newspaper to bring to the attention of the public generally the charges made and others, all tending to destroy the reputation of the respondent. This makes it difficult to determine as to what part of the evidence introduced with reference to the damages sustained by the respondent should be applied to each of the causes of action. Undoubtedly this is why the trial court in arriving at the amount of damages which the appellant should pay to the respondent fixed a single lump sum.

Confining ourselves to the testimony of the respondent at the trial in connection with this first cause of action, which testimony fills many pages of the transcript of the record, we will say that it fully and convincingly explains the injuries occasioned him in his family, profession and social relations by the acts of the appellant and the intense moral suffering which he underwent by reason thereof.

The judge allowed him damages in the total sum of $2,000, and even disregarding the other causes of action set up and considering that the said sum was fixed only to compensate him for the injuries and sufferings to which we have referred, the amount does not seem to us to be excessive.

We shall say very little regarding the second cause of action. The appellant discussed it in his brief jointly with the first and brought out nothing special with reference to it. The publication of the complaint was evident as was also that it constituted a written charge made against the good reputation of an attorney and was therefore actionable *per se.* 25 Cyc., 333, and cases cited.

The appellant contends that the trial court erred in sustaining the third cause of action "because the plaintiff has failed to prove according to law that the defendant published, caused, or permitted to be published the article headed 'Neutral Section, Two Letters,' on December 27, 1912, in the newspaper called *La Voz de la Patria,* which is published in Mayagüez, the said article being the letter which appears to be addressed to José Benet and signed by Agustín Hernández."

The foregoing, which we have copied literally from the appellant's brief, is the sole ground of objection to the judgment in so far as it sustains the third cause of action. The libellous character of the charges made against the respondent in the letter in question is not discussed. Nothing is said regarding the damages sustained by the respondent. It is only contended that it was not proved that the letter was published by the appellant and, therefore, that he is not responsible for the publication.

The complaint contains a transcript of six paragraphs of the letter published in *La Voz de la Patria,* which letter appears to have been addressed by the appellant to the respondent and in which, it is alleged, the following charges were made against the respondent: (*a*) That he was a vile slanderer; (*b*) that he unlawfully, falsely, and fraudulently acted in representation of a client; (*c*) that he was unfaithful to clients who did not remunerate him for his professional services; (*d*) that he committed the crime of perjury and deceived the District Court of Mayagüez; (*e*) that he had falsified evidence; (*f*) that he deceived his clients by making them believe that they had lost suits which had been won in order to acquire their interests at a very low price, to their detriment.

As to the damages, the respondent specifically alleged in his complaint that he had sustained the same and introduced evidence at the trial in support of his contention. In addition to his own testimony, to which we have referred in considering the first cause of action, he offered that of José A. Menéndez who testified that reading the letter in the newspaper impressed him unfavorably toward the respondent and he endeavored to withdraw a case which he had placed in his hands.

In view of the foregoing, let us see whether or not the evidence is sufficient to connect the appellant with the publication of the libellous letter. There is no direct evidence that the appellant personally took the letter to the newspaper. The respondent addressed to the appellant a certain letter, to which we shall refer in considering the counter-complaint, and the evidence tends to show that the appellant answered it. Did the appellant only write and forward the answer to its private destination, or did he bring the same to the attention of the public? That is the decisive question in this case.

The respondent testified under oath that he did not send the letter to the newspaper. The appellant also testified

that he did not send it. The trial judge believed the respondent and not the appellant and the latter has not shown that the action of the judge was caused by feelings incompatible with the honest administration of justice.

On the contrary, all the attendant circumstances tend to show that the conclusion of the judge was correct. The appellant not only denied that he had anything to do with the publication of the letter, but went still further and in his sworn testimony at the trial denied that he wrote the letter. When questioned as to what action he took upon seeing a letter of such a character published in a newspaper as bearing his signature, he answered that he did nothing, believing that it was due to a trick on the part of the respondent.

There was evidence tending to show that the newspaper in which the letter was published was hostile to the respondent. When the editor was called to testify he said that he could not state positively who had taken the letter to the office, but that nevertheless he ordered its publication. His testimony is apparently incredible.

The publication of the letter undoubtedly injured the respondent and was in perfect accord with the attitude assumed by the appellant toward the respondent. Necessarily, the letter was written and caused to be published by some one and after weighing and analyzing all the circumstances, the balance falls on the side of the appellant as the author of both. And we are of the opinion that in so finding the trial court was right.

Therefore, the judgment appealed from in so far as it sustains the complaint should be affirmed.

Finally, let us examine the questions relating to the appellant's counter-complaint.

The first cause of action set up is without merit. It was shown at the trial that the appellant was really charged by the respondent with contempt and was acquitted by the court, but it was also shown that the respondent had good reason for his action. We will confine ourselves to a brief state-

ment of the facts.   An action of intervention in ownership between Francisco Arán and the appellant, in which the respondent was counsel for Arán, had been prosecuted in the Municipal Court of Mayagüez and an injunction was issued restraining the defendant (appellant) from levying on certain property in execution of a certain judgment rendered in his favor.   Later a judgment was rendered decreeing that the said property belonged to intervenor Arán and the temporary injunction was made permanent.   After the judgment had been appealed from and while the appeal was pending, the appellant again endeavored to execute the judgment which had been rendered in his favor by levying on the property which he had been enjoined from levying on by the injunction.

We are also of the opinion that the second and last cause of action set up is without foundation.   It was for libel and was based on the publication of the letter which the respondent wrote to the appellant and which brought out the appellant's answer, which is the ground of the third cause of action set up in the complaint.

After analyzing the said letter it is concluded that unless certain charges which the respondent made therein against the appellant could be proved, such charges might serve as a ground for an action for defamatory libel; but as the respondent proved at the trial that he sent the said letter to the appellant in a closed and sealed envelope in an entirely private manner and that he did not publish the letter in any manner, it is necessary to conclude that this essential element for the existence of the libel is lacking.

Moreover, the appellant did not prove that he sustained any material damage and as to any moral damage which he might have suffered, it is sufficient to quote his own words taken from his sworn testimony at the trial:

"*   *   *.  the statement which Mr. Benet made to me in his letter did not affect me at all; nothing affects me for I am old in matters of this kind."

In view of the foregoing (1) the motion for dismissal of the appeal must be overruled and (2) the appeal must be dismissed and, consequently, the order denying a new trial and the judgment appealed from are

*Affirmed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.

A motion for reconsideration was overruled June 21, 1915.