**R. O. DAVIDSON et al., Appellants,**

v.

**The FIRST STATE BANK OF ANDREWS,**
**Texas, et al., Appellees.**

No. 5253.

Court of Civil Appeals of Texas.

El Paso.

Feb. 19, 1958.

Rehearing Denied March 12, 1958.

John J. Fisher, David C. McCord, Johnson, Guthrie & Stanfield, Dallas, for appellants.

Boyd Laughlin, W. B. Browder, Jr., Milton L. Bankston, Midland, Stubbeman, McRae, Sealy & Laughlin, Midland, of counsel, for appellees.

FRASER, Justice.

This is a malicious prosecution suit brought by appellants against appellees, claiming that appellees (hereafter known as defendants) had maliciously caused the prosecution of plaintiffs, and set in motion the machinery of the law so as to cause the plaintiffs to be indicted by the grand jury of Andrews County with a charge of theft. The trial court entered summary judgment for defendants, from which action this appeal has been taken.

The defendants in this particular action were the First State Bank of Andrews, Texas, and two of its directors, other defendants having been eliminated by the action of other district courts. It appears that R. O. Davidson had an automobile business in Andrews, known as "Davidson Pontiac Company", during the years 1953 and 1954. His son-in-law, B. J. Stickney, worked for this business. His daughter, Norma Jean Stickney, was employed by the defendant bank as a bookkeeper.

These were the three people indicted. It appears that from April 9, 1953, until September 1954, Davidson issued certain checks which were presented to defendant bank, totaling around $18,000. This sum represented payment by the bank of Davidson checks, which were not covered by any funds and were, in other words, "hot checks". The checks were issued by Davidson and Stickney and presented by various payees. It is apparent that the president and directors of the bank did not know of this sizeable overdraft, but that the overdraft had been permitted by William J. Sanders, cashier, and Claude Neely, vice president. Upon learning of these irregularities, the directors conducted an investigation and concluded that more than $18,000 had been paid out on the Davidson-Stickney checks without sufficient funds to cover. After discovering the deficit, the directors of the bank consulted with their attorney, who was also serving as County Attorney, and were advised by him to present the matter to the grand jury. Some effort was made to persuade the plaintiffs to make restitution, and there was an attempt to persuade Mrs. Davidson to turn in some personal property of her own; also, there was talk of Mr. Davidson selling the business in order to pay this debt. These efforts, apparently, did not bear fruit, and the district attorney, a resident of Kermit, Texas, made an investigation of the matter and presented the situation to the grand jury. The record also contains a letter from Mr. J. W. Munson, Departmental Examiner of the Texas Department of Banking, stating that misapplication of funds had been proven, and suggesting that charges should be filed against various people, including Mr. Davidson. Some time after the indictment was returned, an attorney for the defendants presented repayment in the sum of $19,295, which was accepted. An attempt was apparently made to locate the district attorney, but this having failed, the county attorney then presented a motion to dismiss the indictment, which was granted by the trial court. Thereafter, plaintiffs filed their suit for malicious prosecution.

■ It is well established that, in malicious prosecution actions, the proof must be positive, clear, and satisfactory. The elements necessary are the commencement of a criminal prosecution against plaintiff which has been caused by the defendant, and which terminated in favor of the plaintiff. Also, that plaintiff was innocent; there was no probable cause for such proceeding; and it was done with actual malice and resulted in damages to plaintiff: Montgomery Ward & Co. v. Kirkland, Tex.Civ.App., 225 S.W.2d 906; Sullivan v. O'Brien, Tex.Civ.App., 85 S.W. 2d 1106. There is no question here that the first element is admitted, as there was commencement of criminal prosecution; but, taking everything and every inference favorable to plaintiff into consideration, we cannot find that it was caused by the defendants. The record shows that the defendants, as they had every right to do, merely caused the situation to be communicated to the district attorney, who, by his own affidavit, testified that he made an independent investigation. No complaints or information were ever filed by any of the defendants, or by the bank, and none of the defendants appeared before the grand jury. Therefore, there seems to be no ground for saying that defendants caused this prosecution. They merely presented information to the duly constituted officers of the law, as every citizen and institution has a right to do.

■ With regard to the element of termination in favor of plaintiff, it is obvious from the record here that this matter was dismissed because they had paid up, and not because they proved their innocence. There was no trial. The affidavit of Max Ramsey, which was before the trial court, discloses that one David McCord, attorney for the plaintiffs, approached him (Ramsey) and inquired as to how the criminal proceedings against the Stickneys and Davidson could be taken care of. During this

conversation, the affidavit states that Mc-Cord suggested that the plaintiffs (Stickneys and Davidson) would make some arrangement to pay the $19,295 if Ramsey would present a motion to dismiss the criminal proceedings to the district court of Andrews County, Texas. The affidavit further states that Mr. Ramsey was unable to get in touch with the district attorney, and finally drew up the motion himself, which was presented to and granted by the district court. Mr. Ramsey further states in his affidavit that Mr. McCord, the attorney for the plaintiffs, gave him his complete assurance that plaintiffs would bring no civil action against the First State Bank of Andrews or any of its directors. These statements in the affidavit of Mr. Ramsey appear to be uncontradicted in the record. Coupled with the fact that the $19,295 was paid the same day that the motion was presented, these statements appear to us conclusive evidence of a compromise. It has been often held that a dismissal of a prosecution upon agreement between the parties involved is not "favorable termination", but, rather, a compromise. Certainly the bank cannot be criticized for accepting repayment of its losses, as the bank here was not an individual, but an institution responsible for its depositors' funds. The cases with respect to this particular feature have set out the rule that where the termination of a case is one of compromise or settlement, knowingly and understandingly entered into between the parties, such amounts to an admission of probable cause, so that plaintiff is, in effect, barred from later claiming malicious prosecution. Certainly the facts here establish that upon payment of the sum of $19,295, the motion was immediately presented to dismiss, and the court, presumably being in possession of the facts, undoubtedly considered the matter carefully and granted such motion. Therefore, there was no termination in favor of the plaintiff. Sullivan v. O'Brien, Tex.Civ.App., 85 S.W.2d 1106; Aldana v. Tavazon, Tex.Civ.App., 15 S.W.2d 678; 54 C.J.S. Malicious Pros-

ecution § 58, p. 1026; Leonard v. George, 4 Cir., 178 F.2d 312.

As to plaintiffs' innocence of the crime charged, the facts are not disputed as to the overdrafts. We will not discuss the legal question of whether such was a crime, but certainly the district attorney and the grand jury must have thought so. These facts also take care of the next point, to-wit, the absence of probable cause.

As to the presence of actual malice, the record shows that none of the defendants filed any complaints, or even appeared before the grand jury. The directors had not known of this arrangement between the cashier and plaintiffs whereby they were permitted to overdraw to the extent of many thousands of dollars. There is no evidence that they persuaded the district attorney or the grand jury to return the indictment. It was the State of Texas acting through its district attorney and grand jury that charged them with the crime.

■■ Summing up, the evidence is undisputed that defendants filed no complaints; that plaintiffs were indicted by a regularly constituted grand jury, after an investigation by the district attorney. The overdrafts were never denied, and were repaid. Defendants asked for an investigation, as is the right of every citizen and institution. There is no evidence of malice on the part of defendants, nor does there appear to be any impropriety in their actions which might indicate malice. They found a large sum of money missing and, after consulting their attorney and failing to recover same, turned the matter over to the district attorney and grand jury for such action as they saw fit to take. Upon return of the money, the trial court dismissed the indictments. Therefore, the elements necessary to sustain a successful recovery for malicious prosecution are not, in any wise, here present. We have not overlooked the fact that, in the case of summary judgment, every proper indulgence must be given to the position of the appellant, and this we have done; but, taking

as true all of plaintiffs' evidence and giving every favorable inference possible to their position, we see no way for them to recover damages for malicious prosecution on the facts here present. We think the record, as presented to the trial court, sustains him in every way in granting a summary judgment in favor of the defendants. Missouri, K. & T. Ry. Co. of Texas v. Groseclose, Tex.Civ.App., 110 S.W. 477; Montgomery Ward & Co. v. Kirkland, Tex.Civ.App., 225 S.W.2d 906; Reed v. Lindley, Tex.Civ.App., 240 S.W. 348.

The appellants' points are, accordingly, overruled and the decision of the trial court affirmed.